IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,      )<br>                                                         )<br>              Plaintiff,                  )<br>                                                         )<br>       v.                                           )<br>                                                         )<br> GREGG ALLAN WILSON,             )<br>                                                         )<br>              Defendant.             )<br>                                                         ) | 8:06CR145<br><br>MEMORANDUM AND ORDER |

      This matter is before the court on defendant's objections, Filing No. 27, to the report and recommendation ("R&R"), Filing No. 22, of the magistrate, denying defendant's motion to suppress, Filing No. 10.  The one-count indictment charges the defendant with, having been convicted of a crime punishable by imprisonment for a term exceeding one year, and being an unlawful user and/or addicted to a controlled substance, knowingly possessing a firearm, which had been shipped or transported in interstate commerce in violation of 18 U.S.C. § 922(g)(1), 18 U.S.C. § 922(g)(3) and 18 U.S.C. § 924(a)(2).  Filing No. 1. Pursuant to 28 U.S.C. § 636(b)(1), the court has conducted a de novo determination of those portions of the R&R to which the defendant objects.  *United States v. Lothridge*, 324 F.3d 599, 600-01 (8th Cir. 2003).  The court has reviewed the entire record, including the transcript of the hearing on defendant's motion to suppress held on August 8, 2006, Filing No. 26; the supplementary police reports, Exs. 1 and 2; the photographs of the interior of the residence, Ex. 3; and the relevant case law.  The court concludes that the magistrate's R&R is adopted in its entirety.

      Omaha Police Officer Thomas Smith ("Officer Smith") was dispatched to an Omaha residence on February 7, 2006, regarding a burglary report.  When he arrived, Officer Smith spoke with the owner of the residence, Sandra Wilson, and one of her sons, Bart

Wilson. Bart Wilson's girlfriend, Esperanza ("Hope") Spracklin, was also present. Sandra Wilson and Bart Wilson explained to Officer Smith that Sandra Wilson's husband–Bart Wilson's father–had died a few days before and that since that time, some of his belongings, including jewelry and a firearm, were missing. Sandra Wilson and Bart Wilson told Officer Smith that they had seen the missing firearm in a drawer in the room of Gregg Wilson ("defendant"), Sandra Wilson's other son, who lived in the basement of the residence. Initially, Sandra Wilson testified that when Officer Smith first arrived, she did not think she knew that the firearm had been found in defendant's bedroom. She later testified, however, that she had discussed with Officer Smith that the firearm had been located in defendant's bedroom. Additionally, Sandra Wilson testified that prior to the discovery of the firearm in defendant's bedroom, she had last seen it in her husband's night stand in the bedroom she had shared with her husband.

Officer Smith testified that Sandra Wilson told him that she owned the residence and that defendant did not pay rent. Additionally, Officer Smith testified that Sandra Wilson told him when he first arrived that defendant had a bad temper, and that he "sometimes got angry and called her names and got in her face." Hearing on Motion to Suppress, Transcript of Proceeding, Filing No. 26 ("Tr."), at 61. Officer Smith also testified that Sandra Wilson told him that she did not believe defendant would actually harm her. However, Sandra Wilson testified that she told Officer Smith only that defendant would be irritable when upset. She did not recall telling Officer Smith that defendant would "get in [her] face" or call her foul names.

Officer Smith did not have a warrant to conduct a search of the residence. He testified that he asked Sandra Wilson for consent to search defendant's basement

2

bedroom and retrieve the firearm and that Sandra Wilson granted this consent.  Sandra Wilson testified that she did not remember saying that Officer Smith could search the basement, but that she "guess[ed]" she had signed a paper to that effect, although there was no evidence of such a paper.  Tr. at 54.

Officer Smith testified that defendant called the residence and spoke briefly to Bart Wilson, who told him of the presence of the police and that some of their late father's belongings were missing.  Bart Wilson then passed the phone to Sandra Wilson, and Officer Smith testified that he heard defendant screaming at her.  Defendant arrived at the residence within a few minutes.  During an argument among Sandra Wilson, Bart Wilson, and defendant, Officer Smith called for backup.  Officer Smith further testified that he did so because the incident, originally a burglary report, had become a "family disturbance." Tr. at 35.  Officer Smith testified that during the argument, defendant stated the firearm was indeed in the basement, and defendant volunteered to retrieve it.  Officer Smith testified that in response he stated that no one else should get the firearm, but that he himself would do so.  Moments later, Omaha Police Officer Lisa Reynolds ("Officer Reynolds") arrived.

Officer Smith testified that he told defendant to sit down.  Officer Smith went to the basement to search for the firearm without defendant's objection.  Officer Reynolds also testified that she did not recall any response from defendant when Officer Smith stated in her presence that he would retrieve the firearm from the basement.  Defendant's witnesses, Sandra Wilson and Ms. Spracklin, testified that when Officer Smith stated his intent to search defendant's basement room, defendant objected, saying, "'[n]ot without me you're not going down there.'"  Officer Smith testified that after being unable to find the

3

firearm upon an initial search, he secured Bart Wilson's assistance. Officer Smith then found the firearm, a loaded .38 caliber Smith & Wesson, in a dresser drawer in the basement and placed it on a counter in the basement. Officer Smith testified that he then returned upstairs and confirmed through a data check defendant's status as a convicted felon. He then placed defendant under arrest. Officer Smith testified that when he placed defendant under arrest, Sandra Wilson "began to change her story," stating that her husband had put the firearm in the basement a few years before. Tr. at 16-17. Sandra Wilson testified that there was a possibility that she had told Officer Smith this.

Officer Smith testified that without being asked, defendant volunteered that he had placed the firearm in his room for safety purposes, as there had been a number of people in the residence since his father's recent death. Officer Smith further testified that after placing defendant under arrest, he escorted defendant to his police car and then retrieved the firearm from the counter in the basement.

The magistrate concluded that Sandra Wilson gave consent to Officer Smith to search for and retrieve the firearm in the basement and that defendant volunteered, without any questioning or interrogation, to go to the basement to retrieve the firearm. Further, the magistrate found that defendant did not object to Officer Smith going downstairs to search for and retrieve the firearm. The magistrate concluded that after Officer Smith found the firearm, defendant volunteered that he had put the firearm in the basement, and that defendant volunteered this without any questioning from Officer Smith. The magistrate found the testimony of both Officer Smith and Officer Reynolds credible, but determined the testimony of defendant's two witnesses, Sandra Wilson and Bart Wilson's girlfriend, Ms. Spracklin, to be less than credible.

Defendant objects to the recommendation of denial of his motion to suppress and asserts that the search of his living quarters violated the rule set forth in *Georgia v. Randolph*, 126 S. Ct. 1515 (2006). Defendant argues he had a reasonable expectation of privacy in his living quarters and voiced an objection to a search of those quarters by law enforcement. Further, defendant objects to the credibility findings of the magistrate. Defendant notes that the police reports make no mention of the supposed absence of defendant's objection to the search. Additionally, defendant contends that the court should make credibility findings in favor of his two witnesses–particularly Ms. Spracklin, who had no motive to act favorably toward defendant–as they corroborated defendant's objection to the search.

The court finds the magistrate's R&R should be adopted. The court has reviewed the transcript of the hearing on defendant's motion to suppress, Filing No. 26, and agrees with the magistrate's credibility findings. *See United States v. Zavala*, 427 F.3d 562, 565 (8th Cir. 2005) (stating that it was not error for a magistrate judge to settle credibility issues regarding consent to a search in favor of a police sergeant, and it was not error for the district court subsequently to determine that the defendant had consented to the search). Officer Smith's testimony that defendant initially volunteered to retrieve the firearm was consistent with his testimony that defendant did not object to Officer Smith's search of the basement for the firearm.

Officer Reynolds' testimony exhibited that she could not remember a few details definitively, including whether defendant was standing or seated when she arrived and, therefore, whether Officer Smith told defendant to sit down. Additionally, Officer Reynolds testified that when she first arrived at the residence, Officer Smith supplied her with the

5

relevant facts, including that defendant had a felony conviction on his record. This conflicts with Officer Smith's testimony that he determined the defendant had such a record *after* he found the firearm in the basement and returned upstairs. Officer Smith and Officer Reynolds agreed on all other relevant facts. In spite of the two lapses in Officer Reynolds' memory, the court finds that the events transpired in accordance with Officer Smith's own consistent recollection in his testimony.

The testimony of defendant's witness Ms. Spracklin was less than credible, however, as she had poor recollection of certain events, such as Officer Smith's stated reason for searching the basement and Bart Wilson's trip to the basement to aid in the search, and of the timing of certain statements. Defendant's witness Sandra Wilson, his mother, also exhibited incomplete recollection of certain events, such as the manner in which she granted consent to Officer Smith to search the basement and Bart Wilson's trip to the basement. Additionally, portions of Sandra Wilson's testimony exhibited contradictions, as she testified at first that she did not recall knowing of the presence of the firearm in defendant's room when Officer Smith arrived, but then later testified that she had discussed with Officer Smith that the firearm had been located there.

Based on a review of the transcript of the hearing on defendant's motion to suppress, Filing No. 26, the court finds that defendant did not object to Officer Smith's search of the basement of the residence and his retrieval of the firearm. Further, the court finds that Sandra Wilson, a resident of the home with authority to consent to the search, did give Officer Smith consent for the search. The court concludes that Officer Smith was called to the Wilson residence for the purpose of investigating the whereabouts of a stolen

firearm and jewelry, and that Sandra Wilson and Bart Wilson told him of the presence of the firearm in defendant's drawer in the basement.

Because of the court's credibility findings, the *Georgia v. Randolph* decision is not applicable despite defendant's assertion. In *Georgia*, the United States Supreme Court held that "a warrantless search of a shared dwelling for evidence over the express refusal of consent by a physically present resident cannot be justified as reasonable as to him on the basis of consent given to the police by another resident." *Georgia*, 126 S. Ct. at 1526. Because the court finds that Sandra Wilson consented to Officer Smith's search and defendant did not object to the search, the court concludes that there was no violation of *Georgia v. Randolph*. The court agrees with the magistrate as to the credibility of Officer Smith's version of the events and finds that sufficient evidence has been presented to show consent to search.

IT IS ORDERED:

1. Defendant's objections, Filing No. 27, to the R&R are overruled;

2. Defendant's motion to suppress, Filing No. 10, is denied; and

3. The report and recommendation of the magistrate, Filing No. 22, is adopted in its entirety.

DATED this 8th day of November, 2006.

BY THE COURT:

s/ Joseph F. Bataillon
Chief United States District Judge